**UNITED STATES of America**

v.

**Clarence RIDLEY, Sr., Clarence Ridley, Jr., Mrs. Ruby E. Ridley, Robert Lee Ridley, Mildred Louise Ridley and Marshall Wheeler Ridley.**

**Civ. A. No. 4719.**

United States District Court
N. D. Georgia, Atlanta Division.
Nov. 4, 1954.

4

James W. Dorsey, U. S. Atty., and Charles D. Read, Jr., Asst. U. S. Atty., Atlanta, Ga., and Donald P. Hertzog, Sp. Asst. to the Atty. Gen., for plaintiff.

M. Neil Andrews and Hal Lindsay, Atlanta, Ga., for defendants.

SLOAN, District Judge.

The United States brings this complaint in equity alleging that the Commissioner of Internal Revenue has made tax assessments against the defendant, Clarence Ridley, Sr., for the years 1942, 1943, 1944, 1945, 1947, 1948, 1949, 1950 and 1951, which taxes, penalties and interest amount to $20,253.28.

Asserting its lien for taxes upon certain described property, the United States alleges that the other named defendants claim liens against or interests in the described property.

Alleging further that the defendant, Clarence Ridley, Sr., is liable to encumber or transfer the property, the plaintiff prays for an injunction and that the claims of all persons having a lien or claiming an interest in the property be determined and adjudicated and that plaintiff's liens be foreclosed as provided by law.

The defendants make answer. The defendant, Clarence Ridley, Sr., denies the correctness of the tax assessments; denies fraud or intent to evade the payment of taxes and prays that this Court determine the amount of taxes due. The other defendants assert some claim up-

on or interest in some of the described properties and seek a determination thereof.

The case was tried to the Court without a jury and evidence was introduced by the plaintiff and the defendants; counsel for plaintiff and defendants argued the case to the Court, and the Court now, after giving due consideration to the evidence, makes the following

## Findings of Fact.

The Commissioner of Internal Revenue of the United States in November, 1952, made assessments against Clarence Ridley, Sr., for income taxes, penalties and interest for the years 1942, 1943, 1944, 1945, 1947, 1948, 1949, 1950 and 1951. The assessment consists of the following taxes, penalties and interest computed to November 13, 1952:

| Year | Tax | Penalty | Interest | Total |
|------|------|---------|----------|-------|
| 1942 | $ 926.53 | $ 694.90 | $ 537.17 | $ 2,158.60 |
| 1943 | 115.10 | 86.33 | 59.82 | 261.25 |
| 1944 | 4,988.63 | 4,539.63 | 2,293.59 | 11,821.81 |
| 1945 | 1,138.61 | 1,936.14 | 455.18 | 2,629.93 |
| 1947 | 494.98 | 450.44 | 138.48 | 1,083.80 |
| 1948 | 686.24 | 624.47 | 150.81 | 1,461.52 |
| 1949 | 4.00 | 3.64 | .64 | 8.28 |
| 1950 | 69.82 | 63.54 | 6.97 | 140.33 |
| 1951 | 359.34 | 314.03 | 14.29 | 687.66 |

Grand Total..............$20,253.28

The assessment list was received by the Collector of Internal Revenue on November 14, 1952. Notice of assessment and demand for payment was made upon Clarence Ridley, Sr. on November 17, 1952. Notices of lien were filed with the Clerk of the Superior Court of Whitfield County, Georgia on November 25, 1952. On February 13, 1953 there was an abatement of $745.53 for the year 1942, representing $320 tax, $185.53 interest, and $240 penalty.

The penalties imposed for the years 1942 and 1943 included 50% fraud penalty provided by Section 293(b) of the Internal Revenue Code, 26 U.S.C. § 293(b), and 25% delinquency penalty provided by Section 291(a) of the Code. For the years 1944, 1945, 1947, 1948, 1949, 1950 and 1951, the penalties assessed included, in addition to the fraud and delinquency penalties, a 10% penalty provided by Section 294(d) (1) (A) of the Code for failure to file a declaration of estimated tax, and a 6% penalty provided by Section 294(d) (2) of the Code for substantially underestimating the estimated tax.

The defendants, Clarence Ridley, Sr. and Mrs. Ruby E. Ridley are husband and wife, and the other four defendants are their children as follows: Clarence Ridley, Jr., born in 1934; Robert Lee Ridley, born in 1936; Mildred Louise Ridley, born in 1940, and Marshall Wheeler Ridley, born in 1944.

Clarence Ridley, Sr., is 42 years of age, having been born in 1912; is illiterate, but shrewd. He has been earning his own living since he was 14 years of age. A year or two prior to 1937 he moved to Tennessee and while living in that State he was engaged in farming, sawmilling and the illicit liquor business, but in 1937 he moved back to Georgia.

He had some money when he returned to Georgia in 1937 and after his return to Georgia he engaged in the business of manufacturing and selling illicit liquor. For a short time he had an interest in Ridley Brothers Store, it being a general store, in addition to his liquor business. From 1937 through August, 1944, he was engaged in extensive and profitable liquor activities and was apprehended by the law enforcement authorities on numerous occasions during this period.

During the taxable years in question, Clarence Ridley, Sr., his wife and chil-

dren lived on a farm, raised most of the produce they used, lived very frugally, and their living expenses did not exceed $2,000 per year.

There is no evidence that Clarence Ridley, Sr., has been engaged in the liquor business since August of 1944, but he has farmed and earned an income which he estimates at about $2,000 per year, with additional income from the sale of timber. In 1946 and 1947 he worked in an ammunition plant in Georgia, and from December, 1948, through 1953, he worked for the State Highway Department of Georgia earning $150 per month at the beginning, and later $175 per month. In addition, he had some income from the rental of a building and a grist mill in Dalton, Georgia, the building having been acquired in 1947 and the grist mill having been erected in 1948. The defendant, Clarence Ridley, Sr., is presently employed as a Road Commissioner of Murray County, Georgia, in charge of all road construction in the county. He was elected to this office for a term of four years. Until 1952 Clarence Ridley, Sr., never filed a federal income tax return.

Clarence Ridley, Sr., offers no reasonable explanation of his failure to file income tax returns and the Court finds as a matter of fact that he is guilty of fraud with intent to evade the payment of income taxes due. The Court further finds that he failed to file any declarations of estimated taxes and failed to pay the taxes due.

The realty against which the Government is attempting to enforce its lien is as follows:

1. The interest of Clarence Ridley, Sr., in approximately 100 acres in Land Lots 178, 182, 183 and 184 in Murray County, Georgia. This land was part of a plot or approximately 145 acres purchased by Clarence and Nathan Ridley in 1941. They sold 40 acres in the same year. Revenue Agent Oxford testified that Clarence Ridley told him that he bought Nathan Ridley's interest in 1942.

2. Approximately 27½ acres of the Richardson Estate in Whitfield County. Sixty acres of this tract were purchased by Clarence Ridley in January, 1945, and in July 1945 he sold 7½ acres to Murphy Ridley and 25 acres to Milton King.

3. A tract of land bordering on East Morris Street, Dalton, Georgia, purchased by Clarence Ridley, Sr., and his brother, Claude Ridley, in 1947, with improvements thereon consisting of a brick building and a grist mill erected in 1948. Clarence Ridley, Sr., admits a half interest in this property.

4. Three tracts of farm land in Land Lots 178 and 183 in Murray County, purchased from Mrs. Mattie Ridley in 1951. The taxpayer admits ownership of this land.

The Court finds that Clarence Ridley, Sr., is the owner of the above described lands.

The Court finds that the 1947 Pontiac Sedan automobile was purchased at auction by Clarence Ridley, Sr. and that it was purchased with funds of the said Clarence Ridley, Sr.

The Court finds that the 1950 Ford Tudor Sedan, Motor No. 147805 was, and is, the property of Clarence Ridley, Jr., and that although Clarence Ridley, Sr. furnished a portion of the down payment on said automobile to Clarence Ridley, Jr., that the said automobile is not, and never has been, the property of Clarence Ridley, Sr.

The Court finds that on the date that the lien arose, Clarence Ridley, Sr., owned the following personal property: One 1947 Pontiac Sedan heretofore referred to, and one 1946 GMC truck, Motor No. B–228142629.

The Series E United States Savings Bonds against which the Government is attempting to enforce its lien, are as follows:

| Registered Name | When Purchased | Face Amount |
|---|---|---|
| Clarence Ridley, Sr. | September, 1942 | $4,000.00 |
| Clarence Ridley, Sr., P. O. D. Robert Lee Ridley, a minor | March, 1944 | 5,000.00 |
| Robert Lee Ridley or Clarence Ridley, Sr. | March, 1944 | 1,700.00 |
| Mildred Louise Ridley, a minor, or Clarence Ridley | July, 1949 | 675.00 |
| Marshall Wheeler Ridley, a minor, or Clarence Ridley | July, 1949 | 675.00 |
| Clarence Ridley, Jr., a minor, or Clarence Ridley, Sr. | March, 1944 | 1,700.00 |
| Clarence Ridley or Mrs. Ruby E. Ridley | Jan., Feb., March, 1944 | 75.00 |
| Clarence Ridley, Jr., or Mrs. Ruby Elrod Ridley | January, 1942 | 1,000.00 |
| Mildred Louise Ridley or Mrs. Ruby E. Ridley | February, 1944 | 2,000.00 |
| Mrs. Ruby E. Ridley, P. O. D. Clarence Ridley, Jr., a minor | March, 1944 | 5,000.00 |

During 1947, and prior years, since the maximum face value of bonds which could be registered in the name of any one person was $5,000, the taxpayer purchased bonds with his own funds, and registered them in the names of his wife and/or children.

The above described bonds registered in the co-ownership form in the names of Clarence Ridley, Jr., Robert Lee Ridley, Mildred Lee Ridley and Marshall Wheeler Ridley, were purchased by the taxpayer with his individual funds and income and the children are mere nominees of the taxpayer and hold title for the sole use of the taxpayer.

The above described bonds registered in the name of Mrs. Ridley were purchased by the taxpayer with his individual funds and income, and Mrs. Ridley is a mere nominee of the taxpayer and holds title for the sole use of the taxpayer.

Clarence Ridley, Sr., kept no books and records from which his income could be determined. He did not co-operate with the examining agent and gave him no assistance in reconstructing his income. At the trial, for the first time, the taxpayer produced a few business receipts and some bank books.

In the absence of records, Agent Oxford was compelled to undertake to arrive at the taxable income by the net worth method. Under this theory taxable income is arrived at by the aggregate non-deductible expenditures, plus any increase in net worth unaccounted for by gifts or inheritances.

Subsequent to the assessment, Agent Oxford made a supplemental investigation to obtain additional or later information with respect to the net worth and expenditures of the taxpayer during the taxable years. On the basis of this information the agent recomputed the net worth of the taxpayer. The net worth as recomputed is substantially the same as the net worth reconstruction used as a basis for the assessment and results in substantially the same amount of tax.

The year 1941 was picked by the agent as the starting point for the reconstruction since that was the first year in which the agent found sufficient expenditures to produce a taxable net income.

The total ascertainable net worth of the taxpayer as of December 31, 1941, as

determined by the agent was $4,463.94. In arriving at this figure the agent searched all bank, real estate and other records in the counties in Georgia and Tennessee in which the taxpayer had been known to reside. He treated the cash on hand at the beginning of the period as zero since in his conversations with the taxpayer, Mr. Ridley did not tell the agent of any cash on hand.

Using the figure $4,443.94 as his starting point, the agent added the expenditures of the taxpayer for each year and the estimated cost of living to arrive at the adjusted gross income of the taxpayer for each year as shown in the schedule attached.

Nearly all of the expenditures shown on the schedule were substantiated at the trial by bank records, records of bond purchases, real estate records and chattel records. Some of the expenditures were made by the minor children of the taxpayer and have been treated as the expenditures of the taxpayer since at that time the children were too young to have had any income of their own.

The agent, with little basis therefor, estimated as living expenses of the taxpayer and his family, as used in the reconstruction schedule, amounts that coincided with the personal exemptions allowed by the Internal Revenue Code as deductions from gross income. This estimate must yield to the weight of the evidence and so the Court finds that said living expenses did not exceed the sum of $2,000 per year.

The bank records disclosed that the taxpayer had maintained an active checking account in the Hardwick Bank and Trust Company, Dalton, Georgia, from October 9, 1941 throughout the years in question.

The bank records further show that savings accounts were opened in the Hardwick Bank and Trust Company in the following names: "Clarence Ridley, Jr., or Ruby Ridley" on May 17, 1937 (at which time Clarence, Jr., was only three years old); an account in the names of "Clarence Ridley, Jr. or Robert

Ridley" was opened on March 8, 1939; and an account in the name of "Clarence Ridley, Jr." was opened on November 28, 1945. All of these accounts remained open through 1951.

The agent on his schedule of reconstructed income listed a checking account in the Cohutta Banking Company, Chatsworth, Georgia, for the years 1949 through 1951 in the name of "Clarence Ridley or Marshall Ridley" with the following years and balances: 1949—$146.61; 1950—$692.73; 1951—$24.41. Although no bank records were introduced to prove the year and bank balances as shown on the schedule, the taxpayer testified that he maintained an account in the bank during those years.

Among the more sizeable expenditures made during the taxable period were the following: The purchase of savings bonds in 1942 at a cost of $4,500; the purchase of savings bonds in 1944 at a cost of approximately $12,000; the deposit by the taxpayer of approximately $3,000 in his checking account in 1944; the increase in his checking account in 1945 by approximately $1,400; the expenditure of $3,000 in January, 1945, for land in the Richardson estate; the expenditure of $6,000 in 1947 for land in Dalton; the expenditure of approximately $1,750 in 1948 for the erection of a grist mill; the loan of $2,000 to Mr. and Mrs. Couch in 1948; the expenditure of $3,500 in 1951 for a farm in Murray County, and the purchase of a new Pontiac in 1947 and a year old GMC truck in 1948.

There was uncorroborated testimony by the taxpayer that he brought some money with him on his return to Georgia from Tennessee and that this money was kept buried in a gallon jug. He testified that as of the end of 1941 he had money buried in his yard in three jars which he estimated at about $13,000. The taxpayer testified that he had money buried during all of the years in question from 1942 through 1951. He could not estimate the money on hand at the end of 1951 and was unable to say whether it was as much as $20,000.

Two witnesses, one of whom had also been in the illicit liquor business, testified that on several occasions prior to 1942 they had knowledge that Clarence Ridley had buried money. They were unable to testify as to the amount of money he had buried.

The taxpayer attempted to show extensive business activity in 1938, 1939 and 1940 to substantiate his story of a prior hoard. In support thereof he introduced receipts of purchases, most of which were in the name of Ridley Bros. store. He was unable further to show his connection with the store, and admitted that during all the years in question up until the time of the trial that there had been a Ridley Bros. store in that area.

The taxpayer testified that some of the expenditures made during the taxable period were made out of the alleged buried money, and some were made out of current income. He was unable to state what portion of expenditures during the taxable period were paid out of the alleged prior hoard.

Despite the testimony of the taxpayer that he had "jug money" on hand at the beginning of the taxable period, there were circumstances which tend to negate the existence of a prior hoard: (1) In 1938 Mrs. Ridley, in connection with the purchase of certain property from Mr. J. W. Richardson, gave Mr. Richardson a security deed for $400 payable $200 annually at 6%. (2) On February 26, 1941, Clarence and Nathan Ridley gave a loan deed to the First National Bank at Dalton as security for a promissory note for $500, with interest at 8% payable in twelve months. Where large amounts of cash are on hand and readily available, it is not customary to borrow money for purchases at high rates of interest.

The fact that active bank accounts were maintained in 1941 tends to negate the existence of a substantial amount of buried money at that time.

Assuming, as the taxpayer alleges, that there was a substantial amount of money on hand at the end of 1941, the fact that there was also a substantial amount of money on hand at the end of the period in 1951, neutralizes the effect of any prior hoard on the reconstruction of income on the net worth basis.

### Conclusions of Law.

■ The Commissioner's assessment is presumably correct, and the burden of proof is upon the taxpayer to prove it erroneous, and to establish all the facts from which a correct determination can be made.[1] The burden of proof is on the taxpayer to show that the assessments are incorrect, and to show what the correct amount of taxes are. The taxpayer has the burden of coming forward with the evidence to negative every portion of the assessment and to the extent the taxpayer cannot produce such evidence, the assessment remains a valid basis for judgment on behalf of the Government.[2]

■ The taxpayer is required to keep such books of account and records, including inventories, as are sufficient to establish the amount of his gross income and the deductions therefrom.[3]

■ Where the taxpayer does not keep proper books, the Commissioner is authorized to compute income in accordance with such method as in his opinion does clearly reflect income.[4]

■ The federal income tax system is one of self-assessment by the taxpayer. Its efficiency must depend largely on the truth of facts set out by the taxpayer in his return. And, appropriately geared to the gravity of non-disclosure (or false disclosure), Congress has provided

1. Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

2. United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; Crook v. United States,

5 Cir., 30 F.2d 917; Carmack v. Commissioner of Internal Revenue, 5 Cir., 183 F.2d 1.

3. 26 U.S.C., 1952 Ed. § 54; Sec. 29.54–1 Treasury Regulations 111.

4. 26 U.S.C., 1952 Ed. § 41.

varied sanctions, both civil and criminal, to protect that system. Implicit in the working of the system is an obvious duty of keeping proper records, imposed on the taxpayer.[5]

The net worth-expenditures method, under which taxable income is arrived at by the aggregate of non-deductible expenditures, plus any increase in net worth unaccounted for by gifts or inheritances, is a valid method of reconstructing income.[6]

When a taxpayer violates the mandate of the statute which requires him to keep proper records of his income, and conditions are otherwise such that his taxable income may be determined in retrospect only by resort to circumstantial evidence of this character, viz., the net worth method, he will not be permitted to rely upon his ability to conceal the detailed facts of his income and his fraudulent conduct to avoid the imposition of taxes which the collecting authorities may show to be lawfully due.[7]

Where a taxpayer fails to produce records or to give assistance in the reconstruction of his income, approximation in the calculation of net income is justified.[8]

The taxpayer did not keep books and records sufficient to compute his income as required by Section 41 of the Internal Revenue Code.[9]

The Commissioner was justified in this case in resorting to the net worth method of reconstructing income.

The estimated amount of non-deductible living expenses of the taxpayer will be reduced from the amounts estimated and used in the computation of income to the sum of $2,000 per year.

The 1950 Ford automobile, the purchase of which was charged to taxpayer and the value of which was added to his net worth, and so used in the computation of taxable income, will be stricken and eliminated.

When the figures for the computation have been corrected as to these two items, the method of computing the adjusted gross income of Clarence Ridley, Sr., although an approximation, will be based on the best evidence available and is deemed to be correct and to provide a proper basis for the determination of taxes, penalties and interest owed by the taxpayer.

The 50% addition to tax provided by Section 293(b) of the Internal Revenue Code [10] for fraud with intent to evade tax should be imposed for all of the years in question.

The 25% penalty for failure to file a return due to willful neglect provided by Section 291(a) of the Internal Revenue Code [11] should be imposed for all of the years in question.

The 10% penalty for failure to file a declaration of estimated tax provided by Section 294(d) (1) (A) of the Internal Revenue Code [12] should be imposed for the years 1944, 1945, 1947, 1948, 1949 and 1950.

The 6% penalty for substantial underestimate of the tax is improper for the obvious reason that the taxpayer filed no declaration of estimated tax and thus incurred the greater penalty of 10%.

---

5. Halle v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 500.

6. Boyett v. Commissioner, 5 Cir., 204 F. 2d 205; Bryan v. Commissioner, 5 Cir., 209 F.2d 822; Carmack v. Commissioner, 5 Cir., 183 F.2d 1; Kenney v. Commissioner, 5 Cir., 111 F.2d 374; O'Dwyer v. Commissioner, 5 Cir., 110 F.2d 925; Burka v. Commissioner, 4 Cir., 179 F. 2d 483; Cohen v. Commissioner, 10 Cir., 176 F.2d 394; Halle v. Commissioner, supra, note 5; Harris v. Commissioner, 4 Cir., 174 F.2d 70; Katz v. Commissioner, 2 Cir., 188 F.2d 957.

7. Bryan v. Commissioner, supra, note 6.

8. Harris v. Commissioner, supra, note 6.

9. 26 U.S.C., 1952 Ed. § 41.

10. 26 U.S.C., 1952 Ed. § 293.

11. 26 U.S.C., 1952 Ed. § 291.

12. 26 U.S.C., 1946 Ed. § 294.

The taxes, penalties and interest will be computed in accordance with the findings here made.

■ The lien of the United States for taxes assessed arose on November 14, 1952, the date on which the assessment list was received by the Collector of Internal Revenue.[13]

The aforesaid lien attached to all property and rights to property owned by the taxpayer at the time the lien arose, and to all after-acquired property of the taxpayer.[14]

■ The lien of the Government for taxes takes priority over the liens of all other claimants except mortgagees, pledgees, purchasers, and judgment creditors whose liens are recorded prior to the lien of the United States.[15]

On the date the lien arose, Clarence Ridley, Sr., owned and still owns the following realty: (1) Approximately 100 acres in Land Lots 178, 182, 183 and 184 in Murray County, Georgia; (2) approximately 27½ acres of the Richardson estate in Whitfield County, Georgia; (3) a one-half interest in a tract bordering on East Morris Street, Dalton, Georgia, with improvements thereon consisting of a brick store building and a grist mill; (4) three tracts of farm land in Land Lots 178 and 183 in Murray County, Georgia.

At the date on which the lien arose Clarence Ridley, Sr., owned and still owns the following personal property: A 1947 Pontiac Sedan; a 1946 GMC Pick-up Truck, Motor No. B–228142629.

■ Title 31, Code of Federal Regulations, Section 316.4, prescribes that the amount of Series E Bonds that may be held by one person shall not exceed $5,000 (maturity value) for each calendar year up to and including the calendar year 1947, and $10,000 (maturity value) for each calendar year thereafter.

The Court finds that the bonds, as set out in the findings of fact, purchased in September, 1942, and registered in the name of Clarence Ridley, Sr., only, as prescribed by Title 31, Code of Federal Regulations, Section 315.4(1) are the sole property of Clarence Ridley, Sr., in accordance with Section 315.2 of said regulations.

The Court finds that the bonds, as set out in the findings of fact, purchased in March, 1944, and registered in the beneficiary form—Clarence Ridley, Sr., P. O. D. Robert Lee Ridley, as prescribed by Title 31, Code of Federal Regulations, Section 315.4(3) are the sole property of Clarence Ridley, Sr., in accordance with Section 315.46 of said regulations.

The Court finds, pursuant to Title 31, Code of Federal Regulations, Section 315.13, that the bonds, as set out in the findings of fact, registered in the co-ownership form prescribed by Title 31, Code of Federal Regulations, Section 315.4(2) are the sole property of Clarence Ridley, Sr.

The Court finds, pursuant to Title 31, Code of Federal Regulations, Section 315.13 that the bonds, as set out in the findings of fact, registered in the co-ownership form in the names of Mrs. Ruby Ridley and her children as prescribed by Title 31, Code of Federal Regulations, Section 315.4(2), are the sole property of Clarence Ridley, Sr.

The Court finds, pursuant to Title 31, Code of Federal Regulations, Section 315.13, that the bonds as set out in the findings of fact, registered in the beneficiary form—Mrs. Ruby E. Ridley, P. O. D., Clarence Ridley, Jr., a minor, as prescribed by Title 31, Code of Federal Regulations, Section 315.4(3), are the sole property of Clarence Ridley, Sr.

■ The lien of the United States for taxes here found to be due attaches

---

13. 26 U.S.C., 1952 Ed. § 3670.
14. Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56.

15. 26 U.S.C., 1952 Ed. § 3672; United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

to all of the property and rights to property of Clarence Ridley, Sr. heretofore described, and the prayer of the United States for foreclosure is granted.

No sufficient reason appears for the appointment of a receiver or for injunctive process at this time

A judgment for the taxes, penalties and interest, computed in accordance with these findings and conclusions, may be presented.