Robert L. FARROW and Tonia F. Farrow, Plaintiffs,

v.

UNITED STATES of America, Defendant.

William L. FARROW, Individually, and as Executor of the Estate of Eileen H. Farrow, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 20875, 20876.

United States District Court
S. D. California,
Central Division.

April 25, 1957.

Denio, Hart, Taubman & Simpson, Long Beach, Cal., for plaintiffs.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for the United States.

YANKWICH, Chief Judge.

Robert L. Farrow and Tonia F. Farrow, husband and wife, in one action seek to recover the total sum of $734.14 which it is alleged was erroneously and illegally collected by the defendant from them as a penalty under § 294(d) (2), Internal Revenue Code of 1939, 26 U.S. C.A. § 294(d) (2), for alleged substantial underestimation of estimated taxes, as follows:

(1) For the tax year 1951, for the sum of $71.06, together with interest

from March 15, 1952, to and including March 8, 1956;

(2) For the tax year 1952, the sum of $100.72, with interest thereon at the rate of six per cent computed as such from March 15, 1953, to and including March 8, 1956;

(3) For the tax year 1953, the sum of $562.36 with interest thereon at the rate of six per cent per annum from March 15, 1954, to and including March 8, 1956;

(4) For interest at the rate of six per cent per annum from March 8, 1956, on the total sum.

In a companion case William L. Farrow, individually and as executor of the estate of Eileen H. Farrow, deceased, seeks to recover the total sum of $1363.-31 which it is alleged was erroneously and illegally collected from plaintiff as a penalty under § 294(d) (2), Internal Revenue Code of 1939, for alleged substantial underestimation of estimated taxes, as follows:

(1) For the tax year 1951, for the sum of $350.71, together with interest from March 15, 1952, to and including March 8, 1956;

(2) For the tax year 1952, the sum of $343.33 with interest thereon at the rate of six per cent computed as such from March 15, 1953, to and including March 8, 1956;

(3) For the tax year 1953, the sum of $669.27 with interest thereon at the rate of six per cent per annum from March 15, 1954, to and including March 8, 1956;

(4) For interest at the rate of six per cent per annum from March 8, 1956, on the total sum.

The facts from which the controversy stems are not in dispute. During the years involved, the plaintiffs filed joint income tax returns on a calendar year basis. They failed to make and file declarations of estimated tax although required so to do, and failed to show to the satisfaction of the Commissioner that such failure, in each instance, was not due to willful neglect. Pursuant to §

294(d) (1) (A) of the Internal Revenue Code of 1939, penalties were assessed against the plaintiffs for such failures to file. The penalties were paid and the propriety of their assessment and payment is not disputed in these actions.

During all the years at issue in the action, the Commissioner of Internal Revenue also assessed against the plaintiffs penalties under § 294(d) (2) of the Internal Revenue Code of 1939, for substantial underestimation of estimated taxes. The Commissioner arrived at his determination of the amounts, in each instance, by using a zero value for the estimated tax. There is no controversy between the parties as to the correctness of the computation of the amount of the penalties so assessed and paid.

The only issue is whether the defendant properly assessed and collected from the plaintiffs the six per cent penalties for substantial underestimation of taxes under § 294(d) (2) of the Internal Revenue Code of 1939 in addition to the ten per cent penalties under § 294(d) (1) (A) of the Internal Revenue Code of 1939.

In assessing the two penalties, the Government acted under the provisions of the Supplement to Regulation 111 and 118, which reads in part as follows:

"(b) *Additions for specific failures on the part of the taxpayer with respect to the estimated tax.*—

\* \* \* \* \* \*

"(3) *Substantial understatement of estimated tax.* \* \* \* In the event of a failure to file the required declaration the amount of the estimated tax for the purposes of this provision is zero. \* \* \*" (Supplement to Regulation 111, § 29.294–1(b) (3) (B), in effect for 1951; The corresponding regulation in effect for 1952 and 1953 is Regulation 118, § 39.294–1(b) (3) (i) (a), pp. 1079–1081.)

 Treasury regulations will be sustained unless they are unreasonable and plainly inconsistent with the purposes of the Act. They are given effect

as contemporaneous constructions by the Agency which the Congress has charged with the enforcement of the Act. And they gather added strength if the Congress, after their promulgation, did not see fit to disapprove them in a subsequent Act, but reenacted the section to which they related in its former wording. Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 114–116, 59 S.Ct. 423, 83 L.Ed. 536; Bryant v. C. I. R., 9 Cir., 1940, 111 F.2d 9, 11–12; Citizens' Nat. Trust & Savings Bank of Los Angeles v. United States, 9 Cir., 1943, 135 F.2d 527, 529; Gray Line Company v. Granquist, 9 Cir., 1956, 237 F.2d 390, 394 and cases cited in Note 4.

"This bespeaks congressional approval." Corn Products Refining Co. v. Commissioner, 1955, 350 U.S. 46, 53, 76 S.Ct. 20, 25, 100 L.Ed. 29. And see, Helvering v. Winmill, 1938, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52.

The courts which have considered the matter are in disagreement as to the validity of the Regulation here under consideration. Neither the Regulation nor its application in case of failure to file an estimate was successfully challenged until 1954 when a District Court in Georgia held it invalid as imposing a double penalty. United States v. Ridley, D.C.Ga., 1954, 127 F.Supp. 3. Since then other district courts have adopted the same view. See Owen v. United States, D.C.Neb., 1955, 134 F.Supp. 31, 39; Powell v. Granquist, D.C.Or., 1956, 146 F.Supp. 308; Stenzel v. United States, D.C.N.D.Cal.1957, 150 F.Supp. 364.

The view expressed in these cases is that it is illogical to say that a person *who does not* file an estimate *underestimates* his tax. See Jones v. Wood, D.C. Ariz.1956, 151 F.Supp. 678. But we have long learned to apply to all legislation, including taxation, Mr. Justice Holmes' famous apothegm,

"The life of law has not been logic; it has been experience." Holmes, Common Law 1 (1881).

And the cases which have studied with care the legislative history of the sec-

tions relating to the filing of estimates have reached the conclusion that the Regulation is not only consistent with the intent of the Congress but that its very language was taken from Congressional Reports. See Fuller v. Commissioner, 1953, 20 T.C. 308, 316; Hartley v. Commissioner, 1954, 23 T.C. 353, 360; Peterson v. United States, D.C.Tex., 1956, 141 F.Supp. 382, 384–385. The Tax Court in one of the cases cited summed up its conclusion in this manner:

"The regulation is couched in the same language used by Congress in its Conference Report on legislation covering this subject and follows the procedure therein prescribed. It therefore appears that the regulation actually reflects, rather than distorts, the will of Congress, and we uphold its validity." Fuller v. Commissioner, supra, 20 T.C. at page 312.

I concur in this view.

To see the situation in proper perspective, we must bear in mind that with the enactment of the Current Tax Payment Act of 1943, 26 U.S.C.A. § 1621 et seq., a new policy of collecting income taxes was put into effect,—withholding of tax at source. It was assumed that the Government, in this manner, would be assured of collecting taxes from persons who might either escape taxation altogether or, *through improvidence*, might not be in a position to pay them when they became due.

By the new method, the Government was assured that persons deriving their chief income from wages or salaries or stated remuneration would have their taxes deducted periodically by the employer, including the governmental agencies themselves, and thus pay their tax in a more or less *painless manner*.

A popular columnist not very friendly to the income tax system has very recently stated correctly the object of the withholding provisions:

"All earnings are reported at least twice, once by the payer and another time by the recipient and to

prevent the citizen from spending his earnings as he goes along. * *

"The psychological effect of the withholding tax is that many who pay taxes do not automatically realize how much they pay. They regard as their wages the net amount that they take home." George E. Sokolsky, "The Burden of Our Taxes", Los Angeles Herald Express, April 20, 1957, Editorial page.

However, there are many persons with taxable incomes derived from sources other than wages or salaries. To put them on a basis of equality with others, § 58 of the Internal Revenue Code of 1939 was enacted providing for the filing of declarations of estimated tax by individuals and prescribing the contents of the declaration. 26 U.S.C.A. § 58. To insure the 'observance of the Act, three penalties were provided, one for failure to file a declaration within the time prescribed, another for underestimating and a third for failure to pay the estimated tax. 26 U.S.C.A. § 294.

In discussing the penalty for underestimating the tax, House of Representatives Report No. 401, 78 Congress, 1 Session, accompanying the Current Tax Payment Act of 1943, stated:

"Paragraph (5) provides for an addition to the tax in the case of a substantial underestimate of tax. In view of the fact that the taxpayer may revise his estimate of tax quarterly throughout the taxable year, and as late as the 15th day of the last month of the taxable year, the provision for an addition to the tax is a reasonable sanction to insure the payment during the taxable year of a total amount of estimated tax closely approximating the actual liability for the year." 1943 Cum. Bull. 1283, 1292.

The Senate in its Report took cognizance of the same difficulty. 1943 Cum.Bull. 1344, 1346.

In the Report just referred to we find, for the first time, the language which was later carried over into the Regulation. The Report stated:

*"In the event of a failure to file any declaration where one is due, the amount of the estimated tax for the purposes of this provision will be zero."* (Emphasis added.) 1943 Cum.Bull. 1344, 1346.

The Conference Report of the House of Representatives repeated the language as to the need for the added penalty and suggested the identical method of computing it in case of failure to file a declaration. The language of these reports was carried over into the Regulation. Since then the Treasury Department has enforced the Regulation consistently and it was never questioned in the Congress or challenged successfully until the decision in United States v. Ridley, supra.

█ If we advert to the purposes of the Act and of the penalties, it becomes apparent that the taxpayer who fails to file an estimate does great disservice to the Government and to those receiving their compensation in the form of wages and salaries, whose taxes are collected at the source. A sense of inequity may attach to cumulative penalties. However, they are common in the law of income taxation. Severe criminal penalties for violation of the income tax statute do not affect the right of the Government to recover the unpaid or fraudulently evaded tax with added penalties. They have been a part of every Internal Revenue Act ever adopted. The latest Internal Revenue Code, that of 1954, sanctions severe criminal penalties for failure to make or file a return (26 U.S. C.A. § 7203) and for attempting to evade the tax (26 U.S.C.A. § 7201). It also imposes *heavy civil penalties* for failure to file a return (26 U.S.C.A. § 6651), failure to pay the tax due (26 U.S.C.A. § 6654) or underpaying deposit of taxes when required. 26 U.S.C.A. § 6656.

█ So we are impressed with the fact stressed by the Congressional Committees that, as the taxpayer is in a position to revise his estimate of the tax quarterly throughout the year and as late as the 15th day of the last month of the taxable year,

"the provision for the addition to the tax is a reasonable sanction to

assure the payment during the taxable year of a total amount of estimated tax closely approximating the actual liability for the year." House of Representatives Report No. 510, 78 Congress, First Session, accompanying H-R 2570, The Current Tax Payment Act of 1943, 1943 Cum.Bull. 1351, 1372.

In brief, the Congress having enacted a new method of collecting income taxes, tried to equalize matters between those whose income was *visible,* as it were, because it was derived from salaries and wages, a percentage of which could be ordered deducted at their source, and those whose income was of a different character. To that end it resorted to the *three-forked civil penalty* to reach failure to file an estimate of the income, underestimate of it, or failure to pay the estimated tax.

■ There is some logic to the argument that one who does not file a tax return *does not* underestimate his tax. For *you cannot underestimate* that *which you have not estimated.* See Jones v. Wood, supra; Stenzel v. United States, supra. But a person who fails to file the estimate puts himself in so advantageous a position by being able to delay until the expiration of the tax year, the payment of the tax that a regulation which seeks to avoid this by adding a cumulative penalty cannot be said to be inconsistent with the aims of the Act. We should not seek in the realm of taxation that symmetry or logic which is denied to us in life in general and in law in particular. Rather should we envisage the problem from the practical standpoint which confronted the Congress when it changed the system of taxation and entrusted the Treasury Department with the duty to make regulations to carry into effect its policy of *pay-as-you-go.* As stated, this policy would give the taxpayer whose source of income *is not* visible, because derived from enterprises which do not lend themselves to collection at source, an advantage over the salaried private or public employee, unless he were *compelled by the threat of penalties to truthfully* estimate his income. The benefit to the taxpayer from underestimating a tax is great. As stated by the Supreme Court in United States v. Koppers Co., 1955, 348 U.S. 254, 263, 75 S.Ct. 268, 272, 99 L.Ed. 302:

"We find no implication that a self-serving error in the understatement of its tax on its tax return entitles the taxpayer to a greater ultimate tax advantage than does a self-serving error of the same size in the underpayment of the same tax. A *fortiori* we find nothing to justify a greater tax advantage to any taxpayer that underpays its correct tax, over one that pays such tax in full when due."

And the Congress, in order to prevent such tax advantage, having imposed penalties both for *underestimation* of income and for *failure to file* an estimate, there was nothing improper in applying both penalties to the cases before us in which the taxpayers *deliberately over a course of years failed to file estimates.*

Judgment will therefore be for the defendant.