# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-2898

RICHARD B. OSBORN APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      May 18, 2007   )

*Richard B. Osborn*, *pro se*.

*Paul J. Hutter*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Mark M. McNabb*, all of Washington, D.C., for the appellee.

Before KASOLD, HAGEL, and SCHOELEN, *Judges*.

KASOLD, *Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed a concurring opinion.

KASOLD, *Judge*: Veteran Richard B. Osborn appeals pro se a July 29, 2005, decision of the Board of Veterans' Appeals (Board) that in part determined that interest income received from the redemption of U.S. Savings Bonds in 1997 is countable as income for purposes of Department of Veterans Affairs (VA) improved pension benefits.[1]  For the reasons set forth below, the Board's decision will be reversed and the matter remanded for further adjudication.

_____

[1] The improved disability and death pension program became effective January 1, 1979.  *See* Veterans' and Survivors' Pension Improvement Act of 1978 (1978 Act), Pub. L. No. 95-588, § 102(a), 92 Stat. 2497; *see also* 38 C.F.R. § 3.270(b) (2006).  Except as otherwise noted, any reference in this opinion to pension benefits is to the improved pension program.

# I. BACKGROUND

Mr. Osborn served on active duty in the U.S. Navy from May 1943 to January 1946. He was awarded VA disability pension benefits effective September 1989. In 2000, the regional office (RO) received notification of Mr. Osborn's "receipt of $3,605.00 of unearned income for the year 1997," which consisted of interest on Series EE U.S. Savings Bonds. Record (R.) at 82, 84. Based on this receipt, the RO subsequently proposed to adjust Mr. Osborn's pension benefits, retroactive for the year 1997. In a June 2001 rating decision, the RO determined that under 38 C.F.R. § 3.271(d), Mr. Osborn's pension benefits for 1997 should be revised to reflect the receipt of only 50 percent of the $3,605 in interest (i.e., $1,802) because the bonds were held jointly with his son. *See* 38 C.F.R. § 3.271(d) (2006) (providing that income from property held jointly is determined in proportion to shares of ownership of the property). Mr. Osborn appealed to the Board stating that the interest was "profit realized from the disposition of . . . personal property other than in the course of business" and is therefore excluded from income under 38 U.S.C. § 1503(a)(6). *See* 38 C.F.R. § 3.272(e) (2006); *see also* R. at 157-161.

The July 2005 Board decision now on review concluded that interest income on the redemption of U.S. Savings Bonds is countable as income for purposes of pension benefits. It determined that section 1503(a)(6) and § 3.272(e) are not applicable to the redemption of savings bonds because bonds are "not 'personal property' which can be sold for a profit, as contemplated by 38 [U.S.C.] § 1503 or by 38 C.F.R. § 3.272(e). They are, rather, an investment that increases in value by accruing *interest*." R. at 5; *see* 38 U.S.C. § 1503(a)(6); 38 C.F.R. § 3.272(e). The Board concluded that there was "no provision in the law or regulations for the exclusion of accrued interest paid on the redemption of Savings Bonds from countable income." R. at 5.

On appeal to the Court, there is no dispute that Mr. Osborn received $1,802 in interest in 1997 when he redeemed U.S. Savings Bonds. The only issue is whether this interest should be excluded from his income for pension benefit purposes pursuant to the statute and implementing regulation. Mr. Osborn argues that the bonds were personal property and that the interest should be excluded from income pursuant to § 3.272(e) as profit realized when he disposed of the bonds. The Secretary contends that the Board correctly construed § 3.272(e) as not applying to the interest

income because "the bonds were not sold to a third party, but were redeemed for collection of the principal and any interest that had accrued since investment."  Secretary's Brief (Br.) at 6.

## II.  DISCUSSION

Pursuant to statute and regulation, "all payments of any kind or from any source" are included as annual income for VA pension benefit purposes, unless otherwise excluded.  38 U.S.C. § 1503(a); *see* 38 U.S.C. §3.271(a).  One specific exclusion, and the one pertinent to this case, is "profit realized from the disposition of real or personal property other than in the course of a business."  38 U.S.C. § 1503(a)(6).  The implementing regulation expands on this statutory exclusion:

> Profit realized from the *disposition of* real or *personal property* other than in the course of business, *except amounts received in excess of the sales price, for example, interest on deferred sales is included as income.*  In installment sales, any payments received until the sales price is recovered are not included as income, but any amounts received which exceed the sales price are included, regardless of whether they represent principal or interest.

38 C.F.R. § 3.272(e) (emphasis added).

The italicized sections of this regulation are pertinent to our analysis because the Board's conclusion that the interest earned on a savings bond is not excluded from income pursuant to § 3.272(e) rests on its determinations, either singularly or collectively, that (1) the bonds were not personal property, (2) the bonds could not be sold, and (3) the interest earned was not profit.  As discussed below, all three determinations are in error.

### A.  Bonds Are Personal Property

It is axiomatic that the words of a statute or regulation are to be given their plain meaning. *See Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("[A] statute is ambiguous only when the application of the ordinary meaning of the words and rules of construction to the plain language of the regulation fails to answer the question at issue . . . . Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or-more importantly-veteran can rely on a statute or regulation to mean what it appears to say."); *see also Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the

words used.'" (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))); *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (stating that statutory construction "may be characterized as a search for the plain meaning of the statute"); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd,* 513 U.S. 115 (1994).

  *Black's Law Dictionary* (*Black's*) defines "personal property" as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." BLACK'S LAW DICTIONARY 1233 (7th ed. 1999); *see also id*. at 1234 (defining "real property" as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land"). Additionally, the VA General Counsel has opined that personal property includes incorporeal property, such as personal annuities, stocks, shares, patents, and copyrights, and has indicated that bonds are intangible personal property, and the Board may not take a position inconsistent with these opinions. *See* VA Gen. Coun. Prec. 1-93 (Jan. 8, 1993) [hereinafter G.C. Prec. 1-93] (addressing whether a life insurance policy that is surrendered by its owner for cash is considered "profit realized from the disposition of real or personal property" under section 1503(a)(6), and stating that "[p]ersonal property consists of '(1) corporeal personal property, which includes movable and tangible things, such as animals, furniture, merchandise, etc.; and (2) incorporeal personal property, which consists of such rights as personal annuities, stocks, shares, patents, and copyrights.'" (quoting BLACK'S LAW DICTIONARY 1217 (6th ed. 1990))); BLACK'S LAW DICTIONARY 770 (7th ed. 1999) (defining "incorporeal" as "[h]aving a conceptual existence but no physical existence; intangible"); VA Gen. Coun. Prec. 4-89 (Mar. 14, 1989) [hereinafter G.C. Prec. 4-89] (finding that personal property can be "tangible or intangible" in addressing whether a gift of a savings bond should be counted as income for improved-pension purposes); *see also* 38 U.S.C. § 7104(c) ("The Board shall be bound in its decision by the . . . precedent opinions of the chief legal officer of the Department."); *Theiss v. Principi*, 18 Vet.App. 204, 210 (2004) (noting that the Board is bound by VA General Counsel precedent opinions). Further, the VA regulation defining "corpus of estate" and "net worth" for VA pension benefits implicitly considers investment instruments to be personal property in the calculation of the corpus of estate and net worth. *See* 38 C.F.R. § 3.275(b) (2006) ("The terms

4

*corpus of estate* and *net worth* mean the market value, less mortgages or other encumbrances, of all real and personal property owned by the claimant."); VA Form 6, Improved Pension Eligibility Verification Report (including as net worth real property and investments (stocks, bonds, mutual funds, etc.)). Finally, savings bonds are recognized in other venues as personal property. *See*, *e.g.*, *Campbell v. Campbell*, 170 F.2d 809, 809 (D.C. Cir. 1948) (classifying savings bonds in a divorce action as personal property owned jointly by both parties); *United States v. Ridley*, 127 F. Supp. 3, 12 (N.D. Ga. 1954) (characterizing U.S. Savings Bonds as property of the taxpayer subject to the government's lien for unpaid income tax); *Johnston v. Comm'r*, 12 T.C.M. (CCH) 938 (1953) (noting that the assets of the deceased's estate consist of various items of personal property, including U.S. Savings Bonds).

Neither the Board nor the Secretary offer any authority for the conclusion that savings bonds are not personal property within the meaning of section 1503(a)(6) and § 3.272(e). Given the plain meaning of the term, the Board erred to the extent it determined savings bonds are not personal property.

B.  38 C.F.R. § 3.272(e) Is Not Limited to the *Sale* of Property

Not only are words to be given their plain meaning, Congress is presumed to have carefully chosen the words it uses in a statute. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . . When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))); *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary."); *United States v. Cicco*, 10 F.3d 980, 984 (3rd Cir. 1993) ("[W]here Congress uses a common law term in a federal criminal statute, absent a new instruction defining it, Congress is presumed to adopt the term's widely accepted common law meaning.").

Although the Board and the Secretary note that savings bonds may not be sold, neither statutory section 1503(a)(6) nor implementing regulation § 3.272(e) are limited in any way to a "sale" of property. Rather, both statute and regulation focus on a "disposition" of property from which

profit is realized and excluded from income for VA pension purposes. *See* 38 U.S.C. § 1503(a)(6); 38 C.F.R. § 3.272(e). "Disposition" is defined as the "act or manner of disposing" (AMERICAN HERITAGE DICTIONARY 380 (new college ed. 1969)), the "power to dispose of a thing" (RANDOM HOUSE COLLEGE DICTIONARY 383 (rev. ed. 1980)), or the "relinquishment of property" (BLACK'S LAW DICTIONARY 484 (7th ed. 1999)). A VA General Counsel opinion defines it as "a conversion of assets from one form to another." G.C. Prec. 1-93.

When a savings bond is redeemed, it is turned over or surrendered (*see* 31 C.F.R. §§ 315.30, 315.39(a) (2006)), and essentially converted from a bond to cash.[2] Neither the Board nor the Secretary contends that the redemption of a savings bond is not a disposition, and there appears to be no authority for such proposition. Indeed, other authorities have characterized the redemption of a financial instrument as a disposition as a matter of common understanding. *See*, *e.g.*, *Raley v. U.S.*, 491 F.2d 136, 139 n.8 (5th Cir. 1974) (recognizing that under the Treasury regulations a redemption is a disposition when referring to the amount realized from the redemption of financial certificates); *Tyson v. Comm'r*, 25 B.T.A. 520, 526 (1932) ("The securities disposed of included bonds which were called for redemption at maturity.").

Moreover, assuming arguendo that the Secretary could have limited the scope of the section 1503(a)(6) statutory exemption from income pursuant to his authority to promulgate regulations (*see* 38 U.S.C. § 501(a) ("The Secretary has the authority to prescribe all rules and regulations which are necessary or appropriate."); *Lane v. West*, 11 Vet.App. 506, 508 (1998) ("There is no question that the Secretary possesses the authority to promulgate rules and regulations.")), he did not do so. As already noted, with regard to "disposition," the regulation simply restates the statute. *See* 38 U.S.C. § 3.272(e). Given the plain meaning of the word, the Board erred by limiting the scope of § 3.272(e) to profit realized solely from the "sale" of property.

---

[2] "A United States savings bond is a contract between the Federal Government and the purchaser of the bond or the named owners." 64 AM. JUR. 2D *Public Securities and Obligations* § 235 (2007); *see United States v. Dauphin Deposit Trust Co.*, 50 F. Supp. 73, 75-76 (M.D. Pa. 1943). A savings bond earns interest until its final maturity date, unless redeemed earlier, and is redeemed by the owner upon presentation and surrender of the bond. *See* 31 C.F.R. §§ 315.30, 315.39(a). "The accrued interest is added to the issue price at stated intervals and is payable only at redemption as part of the redemption value." 31 C.F.R. § 315.30.

### C.  As Used in 38 C.F.R. § 3.272(e), Profit Includes Interest

The term "profit" means "[a]n advantageous gain or return" or "[t]he return received on an investment" (AMERICAN HERITAGE DICTIONARY 1045 (new college ed. 1969)), and is defined as a "financial gain resulting from the use of capital in a transaction" (RANDOM HOUSE COLLEGE DICTIONARY 1057 (rev. ed. 1980)) or as "excess revenues over expenditures" (BLACK'S LAW DICTIONARY 1226 (7th ed. 1999)).  Certainly, the term "profit" is broad enough to include interest, depending on the context in which it is used.  *See*, *e.g.*, *In re Indep. Serv. Orgs. Antitrust Litig.*, 23 F. Supp. 2d 1242, 1253 (D. Kan. 1998) (referring to profits as including interest); *Aminoil USA, Inc. v. OKC Corp.*, 629 F. Supp. 647, 650-51 (E.D. La. 1986) (determining that net profit did not include interest because it had not been the practice to do so in the industry); *Schall & Co.*, *Inc. v. United States*, 129 F. Supp. 137, 138 (S.D.N.Y. 1954) (noting that a taxpayer could elect to report income interest received on government obligations as excess profits).

Although both statute and regulation exempt from income "profit realized from the disposition of real or personal property," and the statute is silent regarding the definition of "profit," the regulation expands upon the statute and makes it clear from its context that interest is included as profit under the § 3.272(e) exclusion.  *See Deal v. United States*, 508 U.S. 129, 138 (1993) (Stevens, J., dissenting) (noting that even absent a definition in a regulation, context can make "perfectly clear" the meaning of a word).  After stating that "*profit* realized from the disposition of real or personal property" is excluded from income, the regulation follows with an exception to that exclusion for "amounts received in excess of the sales price, for example, *interest* on deferred sales is included as income."  38 C.F.R. § 3.272(e) (emphasis added).  Because the regulation expressly excepts "*interest* on deferred sales" from the exclusion, the inclusion of "interest" must have been contemplated by the exclusion in the first instance.  *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Moreover, given the lack of any specific statutory definition of the word "profit," and its rather expansive general definition, the regulation's inclusion of interest as a component of "profit realized from the disposition of real or personal property" is reasonable.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984) (stating that if the statute is silent, "the

7

question for the court is whether the agency's answer is based on a permissible construction of the statute," and if there is an implicit gap in the statute, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency"); *id*. at 844 ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."). Having included interest as a component of profit by regulation, neither the Board nor the Secretary can ignore it (*see* 38 U.S.C. § 7104(c) ("The Board shall be bound in its decision by the regulations of the Department . . . ."); *Douglas v. Derwinski*, 2 Vet.App. 435, 441 (1992) ("[T]he plain language of the statutory and regulatory provisions at issue demonstrates that Congress and VA have 'envisioned' a [Board] bound by the regulations that bind the entire Department."); *United States ex rel. Kempf v. Commanding Officer of the Fort Des Moines Examining and Entrance Station*, 339 F. Supp. 320, 325 (S.D. Iowa 1972) ("An administrative agency cannot ignore its own regulations.")), and neither the Board nor the Secretary offers any basis for doing so. *See Paralyzed Veterans of Am. v. Ellerbe Becket Architects and Engs.*, *P.C.*, 950 F. Supp. 389, 392 (D.D.C. 1996) ("An agency is empowered to interpret its own regulations so long as such interpretation is reasonable in light of the text and purpose of the statute and consistent with the statute and regulation." (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 514-15 (1994))).[3]

### D. Overall Purpose of the Exclusionary Provision

Not only do the meanings of the individual terms discussed above lead to the conclusion that interest is a component of profit as used in § 3.272(e), this conclusion is wholly consistent with what appears to be the very purpose of the statutory exclusion–to avoid jeopardizing a family's income due to one time payments resulting from the disposition of property otherwise included as part of the veteran's net estate. *See*, *e.g.*, 110 CONG. REC. S2384 (daily ed. Sept. 3, 1964) (statement of Sen. Keating) ("Exclusion from the sale of real or personal property will permit the veteran to make necessary sales without fear of jeopardizing his family's income under the income limitations. At

---

[3] We agree with our concurring colleague that even if the regulation's inclusion of interest as profit under § 3.272(e) is ambiguous, "'interpretive doubt is to be resolved in the veteran's favor,'" rendering, in this case, the same result. *Ramsey v. Nicholson*, 20 Vet.App. 16, 35 (2006) (quoting *Gardner*, 513 U.S. at 118); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991).

8

the same time, it should be noted that the receipts from sale will remain part of his net estate, which is another factor of eligibility for the non-service-connected pension.");[4] H.R. Rep. No. 95-1016, at 70 (1978) ("[T]he bill provides for the exclusion of . . . income realized from the disposition of real or personal property other than in the course of a business, because [] moneys so received are generally needed and used to replace the property destroyed or sold.  Whether those amounts are sizable and are not used to replace the property, they would be considered in the net worth determinations required of all participants in the improved pension program."); *see also Livesay v. Principi*, 15 Vet.App. 165, 172 (2001) ("The Court will sustain a regulation that is consistent with the language of the statute and is a plausible or reasonable interpretation of the law." (citing *Chevron*, *supra*)).

Interest paid upon redemption of a savings bond is no different than the return on investment obtained when property is sold; neither is received by the owner until the property is disposed.  This type of return contrasts with interest paid on a regular savings account or rent paid for an apartment; in each case, the owner of the account or property receives the income without disposing of the underlying property.  Moreover, § 3.272(e) is a liberalizing regulation intended to exclude from income the return on investment paid upon the disposition of property.  *See* G.C. Prec. 1-93 ("In enacting the liberalizing provision to exclude profit as well as recovery of the value of an investment, Congress implicitly endorsed VA's policy of excluding from a pensioner's income the return of an investment."); VA Gen. Coun. Prec. 81-90 (July 18, 1990) ("Clearly, the sale-of-property [exclusion] was a liberalizing provision intended to increase claimants' flexibility in disposition of assets by recognizing that conversion of assets to a more liquid form does not change the nature of the assets from corpus to income.").  Excluding interest paid upon redemption of a savings bond is wholly consistent with this purpose, whereas not excluding it would be inconsistent therewith.  It also is not

---

[4] This legislative history reflects the history when the exclusion was first introduced into the statutory scheme; however, the language under the old and new statute and the old pension and improved pension regulations are the same in this regard.  *See* 1978 Act, *supra*; *see also* 38 U.S.C. § 503(a)(10) (Supp. 1977), 38 U.S.C. § 503(a)(6) (1979), *and* 38 U.S.C. § 1503(a)(6) (1991) (all providing for the exclusion from income for "profit realized from the disposition of real or personal property other than in the course of a business"); *compare* 38 C.F.R. § 3.262(k)(5) (2006) (providing that "profit from the sale of real or personal property other than in the course of a business will not be considered income" with regard to pension claims before January 1, 1979) *with* 38 C.F.R. § 3.272(e) (2006) (providing that "[p]rofit realized from the disposition of real or personal property other than in the course of business" is excluded from income with regard to the improved pension program effective January 1, 1979).

uncommon that a property owner will sell one property for another, or a bond owner will roll one bond into another. In such instances, the property remains a part of the "corpus of estate" for VA pension purposes. *See* 38 C.F.R. §§ 3.275(a), 3.277(b) (2006); 110 CONG. REC. S2384, *supra*. As previously noted, assuming arguendo that the Secretary by regulation could exclude interest from savings bonds from the scope of section 1503(a)(6), he has not done so.

### E. 38 C.F.R. § 3.271(d) Income from Property

The Secretary also argues that the interest received from the redemption of a savings bond is included as income from property pursuant to § 3.271(d), which states that income from property is included as income of the property's owner. Given the general rule that all payments are income unless excluded, as provided in section 1503(a) and § 3.271(a), the clear import of § 3.271(d) is to clarify that income is allocated to the *owner* of property, as opposed to a non-owner. Section 3.271(d) also describes how to allocate income from property that is owned jointly by various owners. However, § 3.271(d) does not add anything further to the definition of what constitutes profit from the disposition of property. Thus, it is not applicable to our determination that the profit from the redemption of savings bonds is specifically excluded from the income calculation.


### III. CONCLUSION

Given the plain meaning of "personal property" and "disposition" as used in both statutory section 1503(a)(6) and regulatory § 3.272(e), the meaning of "profit" as used in the statute's implementing regulation, and the overall purpose of the exclusionary provision, we hold that pursuant to § 3.272(e), the receipt of accrued interest on the redemption of a savings bond is "profit realized from the disposition of . . . personal property" and is therefore excluded from income for VA pension purposes. 38 C.F.R. § 3.272(e); *see Chevron*, *supra*.

That part of the Board's July 29, 2005, decision that determined that interest income received from the redemption of U.S. Savings Bonds is countable as income for purposes of VA improved pension benefits is REVERSED and the matter is REMANDED for further adjudication consistent with this opinion. On remand, Mr. Osborn may present any additional evidence and argument in support of the matter remanded, and the Board must consider any evidence and argument so

10

presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

SCHOELEN, *Judge*, concurring: Though I concur in the majority's ultimate holding, I respectfully dissent from the part of the decision that discusses interest as profit to be excluded from the calculation of income for improved pension payments under 38 C.F.R. § 3.272 (e). The majority states that it is clear from the context of the regulation implementing the statutory exclusion of "profit from the disposition of property" that interest in all other forms that could be realized from the disposition of property is considered "profit." Though the regulation specifically distinguishes "interest from deferred sales" from profit, I believe that this discrete exclusion is not demonstrative that interest was contemplated to be included in the definition of "profit." The interest cited is simply an example of a type or portion of profit–*i.e.*, profit received in excess of the sales price–that VA contemplated as likely to result from a sale of property. I believe that the regulation drafters were focusing on profits above the sales price, not necessarily on interest as profit.

Rather, I find the statute and regulation to be ambiguous as to the precise definition of "profit" and how interest received from the redemption of U.S. Savings Bonds is to be classified. This Court has previously held that when a regulatory term is found to be ambiguous and there is no clear regulatory history to shed light on its meaning, interpretive doubt is to be resolved in the veteran's favor. *See Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). A search of statutory and regulatory history does not reveal how Congress or the agency intended interest received from the redemption of U.S. Savings Bonds should be classified. Furthermore, precedent opinions from VA's General Counsel do not attempt to address this issue, though precedent opinions have been issued on similar issues, such as gifts and inheritances. *See, e.g.,* G.C. Prec. 4-89. Likewise, VA's Adjudication Procedure Manual does not specify how this type of interest is to be classified, although it does classify certain other payments such as interest on individual retirement accounts (IRA), IRA withdrawals, insurance dividends, cashed-in life insurance policies, etc. *See* VA Adjudication Procedure Manual M21-1, Part IV, ¶ 16.41. Inasmuch as the term "profit" with regard to interest is ambiguous and there is not statutory

or regulatory history to shed light on its meaning, I believe that interpretive doubt should be resolved in favor of the appellant.  Therefore, I concur with the result.