Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Appellant,

v.

Herbert S. MASSEY and Sallie E. Massey, his wife, Appellees.

No. 19169.

United States Court of Appeals
Fifth Circuit.

Sept. 25, 1962.

169

John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., Don M. Stichter, Asst. U. S. Atty., Tampa, Fla., Benjamin W. Perkins, Benjamin M. Parker, Robert N. Anderson, Richard J. Heiman, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., for appellant.

George W. Ericksen, Chester H. Ferguson, Wm. Terrell Hodges of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellees.

Before BROWN and WISDOM, Circuit Judges, and DeVANE, District Judge.

DeVANE, District Judge.

The facts in this case were in large part stipulated and are not in controversy. The record shows that one of plaintiffs below, Herbert S. Massey, hereinafter referred to as taxpayer, is a citrus grower residing in Pasco County, Florida. He participated in the organization of Pasco Packing Association on June 30, 1936, and Pasco Growers Cooperative in 1943.

Pasco Packing Association was an agricultural marketing cooperative. It handled citrus fruit of its members for processing, packing, marketing and selling the fruit grown by its members who were also its patrons. At the time of its organization and during the days of its operation, it never issued any capital stock. It operated as a member cooperative. It started operation with no paid in capital. Under its by-laws, it required each member to contribute out of the proceeds of the sale of his fruit a certain amount for capital assets and in this manner over the years collected sufficient money from the growers to enable it to acquire land and construct, own and operate a fully equipped packing house.

During the years of its operation, it executed and delivered to the taxpayer and to other patrons two types of certificates. One of these certificates is denominated as a Building and Equipment Account Retain Certificate. The other certificate is denominated as a Revolving-Fund (working capital) Certificate. Certificates of both varieties in the face

amount of $302,994.63 were issued and delivered to the taxpayer. These certificates incorporated by reference the provisions of all of the by-laws of the Association at the time of their issuance and were issued in accordance with and subject to the provisions of all the by-laws of the Association at the time of issuance. They were made subordinate to all indebtedness of the Association, bore no interest and were redeemable only at the will of the Board of Directors of the Association. During the operating life of the Association, they had no market value and only represented the amount of money the holder had contributed to the capital account of the Association.

Taxpayer also participated in the organization of Pasco Growers Cooperative, which was incorporated in 1943 under the laws of the State of Florida. At the time of its organization and during the days of its operation it never issued any capital stock. It also operated as a member cooperative. It started operation with no paid in capital. It built and operated a fertilizer plant where the grower members obtained fertilizer, etc. The actual fertilizer cost to the cooperative was less than the patrons paid for it. For the difference between such cost to the cooperative and the price paid by the patrons the cooperative issued to its patrons retain certificates. The face amount of each retain certificate so issued was proportionate to the amount that each grower got in fertilizer. The money retained by the co-op was classified as working capital and used to construct, equip and operate a fertilizer manufacturing plant. The total face amount of the retain certificates issued by Pasco Growers Cooperative to taxpayer was $27,536.78. These certificates, like the certificates of Pasco Packing Association, were inferior to all other debts of the Growers Cooperative, bore no interest, had no maturity date, and had no market value at the time of issuance. The certificates were non-negotiable, non-transferrable and non-assignable.

In 1947 the Pasco Packing Association found itself non-exempt from income taxes and it was required to pay Federal corporation taxes from the period of its first existence through the year 1945 as taxable income. The taxable income imposed was on the face amount of the Retain Certificates and Revolving-Fund Certificates issued by the association to its members as a part payment of the proceeds from the sale of patrons' fruit. The same treatment was accorded the Retain Certificates issued by Pasco Growers Cooperative to its patrons.

In the same year (1947) the Cooperative Pasco Packing Association became inactive as an operator and handler of citrus fruit. In that year a new corporation, Pasco Packing Company, a Florida corporation, was formed and took over all the assets, other than accounts receivable, of the Association. The Association was largely paid for the assets transferred to the new company in twenty-year debenture bonds issued by Pasco Packing Company. In 1948 these debenture bonds were exchanged for 15,890 shares of common stock of Pasco Packing Company and thereafter the principal assets of Pasco Packing Association were these 15,890 shares of common stock of Pasco Packing Company.

In 1947 Pasco Packing Company, the new corporation, also purchased all of the properties of Pasco Growers Cooperative other than its accounts receivable, paying therefor twenty-year debenture bonds in the face amount of $370,000.00. In 1948 these debenture bonds were exchanged for 3,700 shares $100.00 par value common stock of Pasco Packing Company.

In August, 1949, the Masseys held retain certificates issued by each of the co-operatives in the total sum of $330,531.41 and on or about August 31, 1949, they sold all their certificates for 20% of face value, totaling $66,106.27 payable in equal yearly installments over a ten year period. Prior to that transaction, none of the certificates had ever been sold or traded by their holders and as a consequence, there was no established market value for them in any sense of the word. The sale of the certificates was solicited

entirely by the purchasers and at that time neither redemption of the certificates nor dissolution of the prospective cooperatives was eminent. This suit involves the amount of cash received on account of these certificates for the 1951 calendar tax year.

The question posed in this case is whether the amount received in 1950 by the taxpayers and future annual installment payments are taxable to them as capital gain assets under Section 117 of the Internal Revenue Code of 1939 rather than as ordinary income as insisted by the District Director of Internal Revenue.

On this issue the trial Court found and held:

(1) The retain or revolving-fund certificates issued by Pasco Packing Association and Pasco Growers Cooperative represented the risk capital of said Cooperative corporation, and was identical in character to the shares of common stock in said Cooperative. It is admitted by the defendant below (appellant here) on brief that it is "well settled that the gain resulted from the sale of common stock is treated as a capital gain."

(2) The retain or revolving-fund certificates owned and sold by the plaintiffs herein constituted capital assets in their hands within the meaning of Section 117, Internal Revenue Code (1939), 26 U.S.C. A. § 117.

(3) The sale of said certificates by the plaintiffs in 1949 resulted in a realization of long-term capital gain within the meaning of the aforesaid statute; and the installment payment attributable to said sale and received by them in 1951 was properly and correctly reported by them as such on their income tax return for such year.

(4) The retain or revolving-fund certificates as held by the plaintiffs did not represent rights to any future income, and their disposition did not result in a conversion of future income. Insofar as the amendment to Treasury Regulation 118, Section 39.22(a)–23, adopted by Treasury Decision 6429 on December 2, 1959, may have been intended to apply retroactively to these facts, it is invalid as in conflict with the statute.

For reasons hereinafter stated we affirm the judgment of the District Court in this case.

It will contribute to a better understanding of the issue in this case if we first consider the back history of the activities of the Internal Revenue Service with reference to tax liability on funds retained by the cooperatives, which were represented by the withholding and revolving fund certificates. Originally the Internal Revenue Service took the position that contingent patronage payments evidenced by withholding and revolving fund certificates were income to the recipients when issued. However, the Courts uniformly rejected the Commissioner's attempt to impose taxes on these truly conditional certificates that had no cash value when issued. Certificates which were similar to the retain and revolving fund certificates in the case at bar have been held by three Courts of Appeals, including this Court, not to represent income taxable against the holder in the year received. Fountain City Coop. Creamery Ass'n v. Commissioner, (7th Cir. 1949) 172 F.2d 666; Commissioner v. Carpenter, (5th Cir. 1955) 219 F.2d 635; Long Poultry Farms, Inc. v. Commissioner, (4th Cir. 1957) 249 F.2d 726.

Following the decisions in these cases holding that the retain and revolving fund certificates were not taxable against the recipients in the year received, the Commissioner assessed income taxes against the cooperatives receiving and withholding the funds. As pointed out above, in 1947 the co-op associations involved in this case were required to pay income taxes from the period they first came into existence through 1945 as taxable income on the funds withheld for which certificates had been issued.

When the co-ops sold their physical properties to the Pasco Packing Company in 1947 and finally wound up hold-

ing shares of stock of that company in payment of the properties acquired, the Internal Revenue Commissioner imposed and collected capital gain taxes represented by the difference in the $100.00 par value of the stock which was exchanged at par and the claimed $137.50 market value, which the Commissioner designated as taxable income. The two associations brought suit to recover the taxes assessed by the Commissioner on this difference. The trial Court held that the cooperatives did not realize any taxable income on these transactions and the Commissioner was required to refund the taxes collected. Pasco Packing Association v. United States and Pasco Growers Association v. United States, decided June 26, 1957, by the District Court for the Southern District of Florida. See R. Exhibit "A", Pages 5–13.

Appellant summarizes his attack upon the judgment of the District Court in this case under four main headings. These will be considered in the order in which they appear in appellant's brief.

I. THE AGRICULTURAL CO-OPERATIVE CORPORATIONS FORCED TAXPAYER TO ACCEPT REVOLVING-FUND CERTIFICATES IN LIEU OF CASH PATRONAGE PAYMENTS AS A CONDITION PRECEDENT TO HIS ENTITLEMENT TO ANY OF HIS NEEDED SERVICES FROM THE COOPERATIVE.

Appellant introduces his argument under this heading with the following statement:

"The legal issue involved in this case is not complex. However, it is important to understand exactly the nature of the revolving-fund certificates which are involved in the case at bar and the role which these certificates play in the day-by-day operations and normal business transactions of the former patron—the herein taxpayer. Hence, the need for the presentation of the ensuing introductory statement."

Appellant then goes into a long discourse on the history of agricultural cooperatives in the United States and points out the value of such cooperatives to the farmers. He concludes this discussion with a summary of the findings of the District Court to be found on Pages 120 and 121 of the Record and concludes his argument under this heading with the statement:

"With this background, we can now turn to the question involved here as to the correct treatment to be afforded the proceeds of a subsequent sale of the certificates."

What is said under this heading calls for no comment from this Court.

II. THE RETAIN AND REVOLVING-FUND CERTIFICATES DO NOT GIVE RISE TO INCOME IN THE HANDS OF THE RECIPIENTS IN THE YEAR OF RECEIPT.

This is merely a brief restatement of the holding of this Court in Commissioner v. Carpenter, supra, and other cases to like effect heretofore referred to in this decision. This also calls for no comment from the Court.

III. WHERE THE INCOME IS NOT REALIZED BY THE PATRON ON THE RECEIPT OF A CONDITIONAL PATRONAGE PAYMENT IN THE FORM OF A REVOLVING-FUND CERTIFICATE A SUBSEQUENT RECEIPT OF CASH FOR THE CERTIFICATE IS INCLUDABLE IN HIS GROSS INCOME AS ORDINARY INCOME.

In order to clearly understand the question the Court has before it under this and the following heading, it is necessary that we again briefly summarize the facts leading up to this case.

As heretofore stated, in August, 1949, taxpayer sold all the revolving fund certificates issued to him by Pasco Growers Cooperative and Pasco Packing Association for 20% of their face value, totaling $66,106.27 payable in equal yearly install-

ments over a ten year period. The first installment on account of this sale was realized in 1950 and in 1951 taxpayer in his income tax return treated this payment ($6,385.59) as a long term capital gain for the sale of capital assets.

The record does not disclose the exact date on which the Commissioner assessed the deficiency tax against taxpayers, but does show that the tax was paid on March 25, 1955. From these facts it may be assumed that the Commissioner imposed this deficiency tax against taxpayers prior to the decision of this Court in the Carpenter case, which was handed down March 2, 1955.

Appellant introduces his argument under this heading with the following statement:

"When the Internal Revenue Service accepted in 1959 the principle that income was not realized upon receipt of conditional patronage payments, it was faced, *for the first time*, with the necessity of prescribing rules specifying the subsequent event which would cause this day-by-day and normal business income to be realized for income tax purposes.

\* \* \* (Italics included)

Thus, in amending Section 29.22 (a)–23(b) of the Regulations to accord with the dicta of these courts, it was expressly provided that such gains 'shall be included in the computation of the gross income of the patron, as ordinary income, in the year of \* \* \* disposition'."

Appellant then enters into an extended discussion of the power of the Commissioner to enforce this amended regulation retroactively to this case and concludes this part of his argument with the following statement:

"While the power to promulgate retroactive Regulations is undoubtedly one that should be used sparingly, it was clearly required and necessary to write a regulation which is essential and clarifying corollary to the position which taxpayers, under Section 22(a) of the 1939 Code, had successfully urged on the courts. Hence, the amended Regulations should be upheld and the judgment below reversed for its failure to apply the Regulations."

The sole question we have before us is whether the amount received in 1950 by the taxpayers is taxable to them as capital gain assets under Section 117(a) of the Internal Revenue Code of 1939 rather than as ordinary income as insisted upon by the District Director.

U. S. Treasury Regulation 111 was in effect and controlling in 1949 when taxpayer sold the revolving fund certificates owned by him and, except for certain amendments of no importance here, was in effect in 1955 when the deficiency assessment was made against appellees and continued in effect until December 2, 1959, when it was amended and superseded by the new regulation (T.R. 118) which appellant contends is controlling in this case became effective. No claim is made by appellant that Treasury Regulation 111 in any way supports his position in this case.

We hold that appellee's tax liability for the year 1951 is to be determined in conformity with the law and the regulation then in force and not by the regulation of December 2, 1959. Helvering, Commissioner of Internal Revenue v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. The regulation promulgated in 1959, even if attempted to be made retroactively applicable to this case, must yield to the controlling statute. Long Poultry Farms, Inc. v. Commissioner, 4 Cir., 249 F.2d 726; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528.

We therefore find it unnecessary to pass upon the constitutionality of this regulation as it does not and cannot change the law applicable to the case. Whether or not the amount received by the taxpayers for the retain and revolv-

ing fund certificates was ordinary income or capital gain assets will be considered under the next heading.

IV. ASSUMING, ARGUENDO, THAT THESE CONDITIONAL PATRONAGE PAYMENT CERTIFICATES WERE IDENTICAL IN CHARACTER TO SHARES OF COMMON STOCK, IT DOES NOT FOLLOW THAT THE PROCEEDS OF A SALE OF SUCH CERTIFICATES WOULD BE TAXED AS CAPITAL GAIN. IN THE CASE AT BAR, THE PROCEEDS OF SUCH SALE SHOULD BE TAXED AS ORDINARY INCOME IN THE YEAR OF SALE.

Under this heading, appellant discusses numerous decisions of the Supreme Court of the United States, including Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168; Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S. Ct. 20, 100 L.Ed. 29; Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, and Commissioner v. Gillette Motor Transport Co., Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617, contending that these cases are controlling on the Court here. The Court has carefully considered these cases and finds that these decisions in no way touch the issue involved in this case. This case turns on its own special facts.

As pointed out above, the sole question we have before us is whether the amount received in 1950 by taxpayers is taxable to them as capital gain assets under Section 117(a) of the Internal Revenue Code of 1939 rather than as ordinary income as contended by the District Director of Internal Revenue. The parties are in agreement that the certificates which taxpayer sold do not fall within any of the excluded categories of Section 117(a) of the Internal Revenue Code, which defines as capital assets all property except such excluded categories.

Since the decision of this Court in the Carpenter case and prior to the adoption of Treasury Regulation 118, Section 39.22(a)–23, as amended December 2, 1959, the Director of Internal Revenue has in numerous cases ruled that funds realized from the sale of cooperative retain certificates constituted capital assets, disposition of which resulted in capital gain or loss. Most of the record in this case (Pages 30–118) concerns rulings of the District Director in some of these cases. They all support the position of taxpayers in this case.

In conformity with these rulings, the Commissioner in 1947 moved against the two cooperatives involved in this case and levied income taxes against them (which they were required to pay) on all funds retained by them, which funds represented the retain certificates issued to patrons by them. When he did this, in our opinion he forever closed the door against him going back to the recipients of the retain certificates and collecting ordinary income taxes on monies retained by these cooperatives and used exclusively for capital requirements. Furthermore, when this case was before the Court below, the parties stipulated (R. Pages 9 & 12) that "the retain certificates when issued represented the risk capital of the association and no subsequent corporate event changed the character of those certificates." At this point they ceased to have any of the indicia of postponed income or of anything except what they were—permanent investments in the ownership of the fixed assets of the cooperatives. C. f. Moberg v. Commissioner of Internal Revenue, 5 Cir., 305 F.2d 800.

We hold with the District Court that these certificates were issued to represent risk capital of the cooperatives and we hold that the trial Court correctly disposed of the issues in this case and. its judgment is

Affirmed.