**William L. RALEY and Thelma C. Raley, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 73–1674.**

United States Court of Appeals, Fifth Circuit.

March 15, 1974.

Commission's neglect was due to good faith oversight or error of law, it would hardly be appropriate otherwise.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Louis A. Bradbury, Attys., Tax Div., Dept. of Justice, Lee H. Henkel, Jr., Acting Chief Counsel, IRS, Washington, D. C., Oscar Blasingame, Asst. U. S. Atty., Tampa, Fla., John L. Briggs, U. S. Atty., Jacksonville, Fla., for defendant-appellant.

William R. Frazier, Jacksonville, Fla., for plaintiffs-appellees.

Before BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Government in this tax refund suit appeals a decision by the District Court holding that money received by taxpayers [1] in the redemption of four revolving fund retain certificates from agricultural cooperatives was taxable as capital gain rather than as ordinary income.[2] Taxpayers had reported these as capital gains but the Commissioner reclassified the amounts as ordinary income. We conclude that the Judge was both right and wrong and in a sort of Solomonic way, The Noah's Ark v. Bentley & Felton Corp., 5 Cir., 1961, 292 F. 2d 437, 438, 1961 A.M.C. 1641, 1642, we hold that retain certificates received after December 2, 1959 are not entitled to capital gain treatment. The District Court was correct, however, in holding that proceeds from redemption of certificates received prior to December 2, 1959 constituted capital gain.[3] Conse-

---

[1]. Taxpayers, William L. and Thelma C. Raley, filed tax returns for their fiscal years ending June 30, 1967 and June 30, 1968. They seek recovery for payment of income tax deficiencies and interest in the following amounts:

| Fiscal Year | Deficiency | Interest |
|---|---|---|
| June 30, 1967 | $1,244.21 | $101.97 |
| June 30, 1968 | 1,306.90 | 28.71 |
| Totals | $2,551.11 | $130.68 |

[2]. Following First National Bank of Birmingham v. United States, 5 Cir., 1966, 358 F.2d 625, 631, the Attorney General in response to a request from the bench advised the Court that the RIRA data computer system revealed that only one other case was pending, Agway, Inc. v. United States, (Court of Claims, No. 30272), but that the problem arises frequently in auditing returns and consequent administrative handling in the Internal Revenue Service.

[3]. Effective December 31, 1962, the Internal Revenue Code of 1954 was amended by Subchapter T (26 U.S.C.A. §§ 1381–1388) which definitely resolved the dispute in favor of the Government. Pub.L. 87–834, § 17(a), Oct. 16, 1962, 76 Stat. 1045. Now both the cooperative and the patron know exactly how they will be taxed. Tax treatment for the patrons provides that the retains must be taken into gross income during the year of receipt.

§ 1385. *Amounts includible in patron's gross income*

(a) *General rule.*—Except as otherwise provided in subsection (b), each person shall include in gross income—

(1) the amount of any patronage dividend which is paid in money, a qualified written notice of allocation, or other property (except a nonqualified written notice of allocation), and which is received by him during the taxable year from an organization described in section 1381(a).

quently we reverse and remand in part the decision of the District Court.

We have extracted the essential facts in this case from the stipulated facts, none of which are questioned. Taxpayers, owners and operators of Florida citrus groves, were members of the marketing Coop Dundee Citrus Growers' Association and participants in the Florida Citrus Canners Cooperative. As standard practice, the Coops distributed retain certificates as a form of dividend to their patrons as a distribution of excess of funds received by the Coop in fulfilling its duties to the patrons.

Because in our analysis, the critical date is 1959, it is sufficient merely to state that of the four Coop certificates two were issued prior to 1959 and two thereafter with redemptions as to all occurring in tax years 1967 and 1968.[4]

As a series of court decisions supplying the artifacts reflect, it is relatively ancient history that retain certificates were not taxable when issued to the patrons because there was no ascertainable market value.[5] Neither party has asserted that either the Coop or taxpayers would have had to include these certificates as a part of gross income in the year in which issued and received.

Not seeking to reopen this chapter the Government argues that the certificates were taxable as ordinary income to the patrons in the year in which they were *redeemed*. Taxpayers counter with the argument that the certificates were technically taxable at the time of *issuance* to the patrons but since the certificates had no marketable value there was

nothing to tax but in any event they are to be treated as capital gains.

In two prior cases this Court was faced with having to make a determination regarding the tax status of retain certificates issued by Coops. In the first, Commissioner of Internal Revenue v. Carpenter, 5 Cir., 1955, 219 F.2d 635, a patron of a farmer's Coop received revolving fund certificates in a face amount equal to his share of the retained proceeds. The Government asserted that the patron had to include the face value of the certificates in his gross income in the year the certificates were received. This Court rejected the Government's position and held that the certificates did not constitute income upon *issuance*. Underlying its decision, the Court emphasized that at the time of issuance the certificates had no fair market value. Also, the patron was unable to force redemption of the certificates on his demand or control the amount he would receive since both were subject to the discretion of the Coops' directors. Since the patron had no right to receive anything but the certificates, which had no market value, the Court held they did not constitute ordinary income and the patron could not be held liable for the face value as taxable income in the year of issuance.

It bears repeating that the Court in *Carpenter* was presented only with the question of whether the certificates constituted ordinary income at the *time* of issuance and receipt. All we held was that the certificates had no market value at the date of receipt. No question was

4. *Pre-1959 Certificates*

| | | |
|---|---|---|
| (a) 6/30/49 Fla. Citrus Canners Coop. | $4,625.41 | |
| (b) 6/31/51 Growers Fertilizer Co. | 1,446.76 | |
| (c) Total Pre-1959 | | $6,072.17 |

*Post-1959 Certificates*

| | | |
|---|---|---|
| (d) 6/30/62 Dundee CGA | $3,112.58 | |
| (e) 6/30/62 Dundee CGA | 449.03 | |
| (f) Total Post-1959 | | 3,561.61 |
| (g) Total Redemptions 1966–1968 | $9,633.78 | |

5. The certificates had no fixed date of maturity since redemption was presumably at the discretion of the Coops' directors.

raised concerning the tax treatment to be accorded the proceeds from the certificates upon redemption whether as ordinary income or capital gains. Consequently *Carpenter* is not determinative of the proper tax treatment of proceeds on redemption.

The second case, Tomlinson v. Massey, 5 Cir., 1962, 308 F.2d 168, comes perilously close to a lion in the streets requiring en banc to avoid its authoritative consequences. As here it involved taxability of the *proceeds* in the year of receipt from the sale of certain retain revolving fund certificates. During the years 1936 to 1949 taxpayer Massey had received the certificates which had a total face value of $330,531.41 from two Coops of which he was a member.[6] In 1949 Massey sold all the certificates for 20% of their face value, or $66,106.27. The issue was whether this amount could be claimed by the taxpayer as capital gain [7] in the year of sale.

This Court approved the classification of the redemption proceeds as capital gains but stated that "[t]his case turns on its own special facts." The distinctive issue before the Court in *Massey* was whether the amounts received by the patrons for sales in 1949 would be taxable as capital gains as they would have been under pre-1959 law or whether under the Regulations which became effective December 2, 1959 [8] the taxpayer would have to treat this as ordinary income. In holding that the certificates represented risk capital of the cooperatives [9] and were hence subject to capital gains treatment under the 1939 Code, the Court recognized that the sole issue before it was one of retroactivity rather than tax status.

We hold that appellee's tax liability for the year 1951 is to be determined in conformity with the law and the regulation then in force and not by the regulation of December 2, 1959.

6. Typical of such certificates issued by Coops, they were subordinate to all other indebtedness of the Coop, paid no dividends, and were redeemable at the discretion of the directors.

7. The claim to capital gain treatment was asserted under § 117(a)(1) of the 1939 Code which accorded the same treatment as § 1221 of the 1954 Code.

8. Clear changes for the tax status of cooperative retain certificates were adopted in the 1959 amendment to the Regulations for the 1939 Code (Tres.Reg. § 39.22(a)–23) and the 1954 Code (Tres.Reg. § 1.61–5). The following sections delineated the patron's obligation in treating income from the disposition of retain certificates as ordinary income:

(b) Extent of taxability. (1) Amounts allocated to a patron on a patronage basis by a cooperative association with respect to products marketed for such patron, or with respect to supplies, equipment, or services, the cost of which was deductible by the patron under section 23(a)(1) or (2), shall be included in the computation of the gross income of such patron, as ordinary income, to the following extent:

(i) * * *

(ii) * * *

(iii) If the allocation is in the form of revolving fund certificates, retain certificates, certificates of indebtedness, letters of advice, or similar documents, the amount of the fair market value of such document at the time of its receipt by the patron. * * *

However, for purposes of this subdivision, any document which is payable only in the discretion of the cooperative association, or which is otherwise subject to conditions beyond the control of the patron, shall be considered not to have any fair market value at the time of its receipt by the patron, unless it is clearly established to the contrary.

(iv) * * *

(2) If any allocation to which subparagraph (1) of this paragraph applies is received in the form of a document of the type described in subparagraph (1) (iii) or (iv) of this paragraph and is redeemed in full or in part or is otherwise disposed of, there shall be included in the computation of the gross income of the patron, as ordinary income, in the year of redemption or other disposition, the excess of the amount realized on the redemption or other disposition over the amount previously included in the computation of gross income under such subparagraph.

9. At trial the parties stipulated that "the retain certificates when issued represented the risk capital of the association and no subsequent corporate event changed the character of the certificates." 308 F.2d at 174.

Helvering, Commissioner of Internal Revenue v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L. Ed. 536. The regulation promulgated in 1959, even if attempted to be made retroactively applicable to this case, must yield to the controlling statute. Long Poultry Farms, Inc. v. Commissioner of Internal Revenue, 4 Cir., 249 F.2d 726; Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528.

308 F.2d at 173.

The only thing that was necessary to the Court's decision in *Massey* was to determine the state of the law in 1949, the date of the redemption of the retain certificates. Whether out of its contemporary enlightened conception of the enterprise nature of retain certificates or, more likely, the Service's singular lack of success in securing favorable court decisions, it was clearly the position of the Service prior to 1959 to treat redemption proceeds as capital assets. *Massey* recognized the prior 1959 law which the amendments to the Regulations were to alter.

Since the decision of this Court in the Carpenter case and prior to the adoption of Treasury Regulation 118, Section 39.22(a)–23, as amended December 2, 1959, the Director of Internal Revenue has in numerous cases ruled that funds realized from the sale of cooperative retain certificates constituted capital assets, disposition of which resulted in capital gain or loss.

308 F.2d at 174.

When we analyze the Court's decision in *Massey* we see that the issue presented here, sales of certificates after the effective date of the 1959 amendment, was never posed in *Massey*. No challenge was made in *Massey* nor indeed in this case, to the validity of the 1959 amendment with respect to post-1959 sales or redemptions of certificates issued after 1959. The problem in *Mas-*

*sey* was not the status of proceeds as such. Rather it was the more pedestrian question of retroactivity or principles akin to it in applying marked changes in the applicable law.

The Government now presses for a decision abandoning *Massey* which we do not feel called upon to make. This panel is bound by the decision in *Massey*, independent of the internal reasons given in that opinion for the result, to the extent that redemption proceeds from certificates received prior to December 2, 1959 will be treated as capital assets. Certainly at this late date there is nothing which the RIRA crystal ball can tell us to indicate that this narrow issue in point of time is enbancworthy. See McLaurin v. Columbia Municipal Separate School District, 5 Cir., 1973, 486 F. 2d 1049.

With respect to redemption proceeds from post-1959 certificates, the Regulations clearly prescribe the consequences to be ordinary income treatment.

The Government is not requesting that we retroactively apply Subchapter T (see note 3, *supra*) which would make the certificates ordinary income to the patrons on date of receipt. For our present purposes, these statutes did not change the law as of December 31, 1962 to make former capital gains into ordinary income. The statutes did not relate to the tax status of the item but only to the *time* of taxation. From the adoption of the 1959 amendment to the Regulations, the Government viewed retain certificates as non-capital assets and required the patron to treat the amount received in redemption as ordinary income. After December 31, 1962 the *time* of receipt of ordinary income was pushed back to the date of receipt, not redemption.

Affirm and reverse in part and remand for purposes of computation.[10]

Affirmed in part; reversed and remanded in part.

10. See note 4, *supra*, taxpayers win on lines (a), (b) and (c), the Government on (d), (e) and (f).