*1368
 
 PER CURIAM.
 

 DECISION
 

 The judgment
 
 **
 
 of the United States Claims Court determining that the amounts realized on the redemption of the United stock here in controversy (over and above the fair market value previously reported) is to be treated as a long-term capital gain and taxed accordingly, and that plaintiff is entitled to recover additional tax paid on those amounts as ordinary income (with the specific amounts to be determined by the United States Claims Court), is
 
 affirmed.
 

 OPINION
 

 This is a suit for refund of income tax for appellee’s fiscal year ending June 30, 1962. The Claims Court decided that appellee-taxpayer’s gain on the redemption of preferred stock in an agricultural cooperative (of which taxpayer was a patron) is taxable as long-term capital gain, rather than as ordinary income (as argued by the Government). The Government appeals.
 

 We agree with Judge Yannello of the Claims Court that this case is controlled by
 
 Agway, Inc. v. United States,
 
 524 F.2d 1194 (Ct.Cl.1975)
 
 (Agway I),
 
 and that the 1959 regulation on which the Government relies to distinguish
 
 Agway I
 
 is invalid because it attempts to alter the tax treatment mandated by the Internal Revenue Code, as interpreted by
 
 Agway I.
 
 That decision of the Court of Claims is binding on this panel under our recent decision in
 
 South Corporation and Seal Fleet, Inc. v. United States,
 
 690 F.2d 1368. For the reasons given by Judge Yannello
 
 (see
 
 Appendix, infra),
 
 Ag-way I
 
 compels the same result here.
 

 Affirmed.
 

 APPENDIX
 

 The opinion of Judge Yannello follows:
 

 This suit seeks refund of income tax paid in the amount of $12,240, plus interest, relating to plaintiff’s fiscal year ending June 30, 1962. The issue, simply put, is whether plaintiff’s gain on the redemption of preferred stock in an agricultural cooperative (of which taxpayer was a patron) is taxable as ordinary income or as long term capital gain.
 

 Introduction
 

 Taxpayer in this case was the Cooperative Grange League Federation Exchange, Incorporated (referred to as “Exchange”.) As a result of a statutory merger effective July 1, 1964, Agway, Incorporated, became the successor-in-interest to Exchange, and Agway is the plaintiff named in this action. Exchange was a patron and a shareholder of an agricultural cooperative referred to herein as “United” during the years in issue. Exchange had also been a patron and shareholder in United during earlier tax years which were the subject of litigation in this court
 
 sub nom. Agway, Inc. v. United States,
 
 207 Ct.Cl. 682, 524 F.2d 1194 (1975), referred to herein as
 
 “Agway I”.
 

 Historical Background: Statutes & Regulations
 

 The history of agricultural cooperatives, their tax treatment, and that of their patrons has been discussed in detail in a number of court decisions, and, with respect to the circumstances relevant here, the law prior to 1959, insofar as this court is concerned, was set forth clearly and succinctly in
 
 Agway I.
 
 It is not necessary here to repeat in detail this history.
 
 [1]
 

 
 *1369
 
 In
 
 Agway I,
 
 United’s preferred stock, issued to Agway prior to 1959 and redeemed thereafter was taxed as ordinary income in the year of issuance to the extent of fair market value, and the defendant contended that the stock should also be taxed as ordinary income, in the year of redemption, to the extent of any excess between the fair market value previously reported (on issuance) and the par value of the stock redeemed. This court agreed that the statute required taxation upon receipt of the stock at ordinary income rates to the extent of the fair market value. However, the court found that the excess amount received upon the post-1959 redemption of the stock was subject to taxation as a capital gain, not as ordinary income.
 

 In reaching this determination, the court rejected defendant’s argument that the stock did not constitute a “capital asset” under the Internal Revenue Code
 
 (e.g.,
 
 26 U.S.C. § 1221). The court noted that the defendant’s characterization could be accepted “only if there is no substantial investment intent”.
 
 Agway I,
 
 207 Ct.Cl. at 694, 524 F.2d 1194;
 
 see also Corn Products Refining Co.
 
 v.
 
 Commissioner,
 
 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955). The court found that the United preferred stock held by Agway, did constitute a capital asset, and that if a contrary holding were reached:
 

 we would be effectively holding that cooperatives and their patrons could not hold capital stock as a capital asset, and this would be a fundamental change in the tax law without any statutory justification. It would negate [26 U.S.C.] § 521(b)(2) and render the 1962 amendments (§§ 1381-88) needless. We find no statutory support for such a change, and we are given no compelling precedent of the Supreme Court either. Rather, as the court did in
 
 [United States v. Mississippi Chemical Corp.,
 
 405 U.S. 298, 92 S.Ct. 908, 31 L.Ed.2d 217 (1972) ], we seek the result that best conforms with existing statutes laid down by Congress. Congress is the lawmaker — not we in the judiciary.
 
 [Ag-way I,
 
 207 Ct.Cl. at 695, 524 F.2d 1194.]
 
 [2]
 

 Thus, the court found the stock in issue in
 
 Agway I
 
 to constitute a “capital asset” and, moreover, determined that the redemption thereof was “not essentially equivalent to a dividend” under 26 U.S.C. § 302(b)(1).
 

 As a capital asset, the redemption of which was not equivalent to a dividend, the redemption of the stock was subject to tax treatment as a capital gain under applicable statutes.
 

 The stock in issue in
 
 Agway I
 
 was issued prior to 1959 and was redeemed after 1959. The court rejected the defendant’s reliance on a regulation issued in 1959, finding, as had other courts, that such regulation could not be applied to stock issued prior to its promulgation.
 
 [3]
 

 See also Raley v. United States,
 
 491 F.2d 136 (5th Cir.1974);
 
 Tomlinson v. Massey,
 
 308 F.2d 168 (5th Cir.1962).
 

 
 *1370
 

 Discussion
 

 The stock in issue in the instant case was issued in 1960, at which time plaintiff and defendant agreed that it had a fair market value of $62 per share, which was reported by plaintiff as ordinary income. The stock was redeemed in 1962 at par value of $100 (a gain of $38 per share over the fair market value on issuance).
 

 The fact that the preferred stock in dispute in the instant case was both issued and redeemed
 
 after
 
 the 1959 promulgation of a regulation is the
 
 sole
 
 factual distinction between this case and
 
 Agway I,
 
 wherein the stock was issued before 1959. Consequently, apart from the possible impact of the 1959 regulation, this case warrants entirely the same result as was reached in
 
 Agway I
 
 —namely, that under applicable statutes the stock here in issue constitutes a capital asset, the redemption of which was “not essentially equivalent to a dividend.” Hence, if held for a sufficient period of time, the redemption of this capital asset would clearly result in a long-term capital gain for tax purposes. Defendant’s arguments to the contrary in the instant case (and it is noted that such arguments largely repeat those presented to and rejected by the court in
 
 Agway I)
 
 are insufficient to warrant an overturning here of the
 
 Agway I
 
 decision.
 
 [4]
 

 We turn now to the sole new aspect of this case, namely the effect of the 1959 regulation upon stock issued
 
 and
 
 redeemed after its promulgation. The 1959 regulation prescribes that stock such as that here in issue is to be taxed as ordinary income upon receipt at the then fair market value (the customary treatment and not in controversy),
 
 and
 
 that the excess between fair market value on receipt and full face value (or the par value) obtained upon redemption thereof is also taxed as ordinary income, upon the redemption.
 
 See
 
 Treasury Regulation Section 1.61-5.
 
 [5]
 

 This regulation has been held to apply to stock similar to that in issue here with the result that the stock was taxed upon redemption as generating ordinary income.
 
 Raley, supra.
 
 It must be noted, however, that the court in
 
 Raley
 
 stressed, at 140, that:
 

 [n]o challenge was made in
 
 Massey
 
 nor indeed in this case, to the validity of the 1959 [regulation] amendment with respect to post-1959 sales or redemptions of certificates issued after 1959.
 

 In the instant case, the plaintiff has indeed challenged the validity of the 1959 regulation, and it is upon that challenge that this case is to be resolved.
 

 In short, plaintiff here contends that the regulation, to the extent it mandates treatment of any gain, on redemption, over fair market value in a manner inconsistent with that provided, for by the Code itself is void and of no effect.
 

 The Code, prior to 1962,
 
 [6]
 
 provided for ordinary income treatment of only the fair market value of the stock at the time of receipt, as indeed was recognized by this court in
 
 Agway I.
 
 However, the Code prescribed no particular or unique manner of treatment of the excess obtained upon redemption of the stock (a capital asset). Ab
 
 *1371
 
 sent any such specific statutory provision, the gain obtained upon redemption was accorded the tax treatment generally applicable to a capital asset, i.e., treatment as a capital gain (or loss), either short or long term as otherwise appropriate.
 
 See Agway I, supra.
 

 The 1959 regulation attempted to provide for unique treatment of the cooperative stock, a capital asset, contrary to that which would normally apply to such an asset under the Code. The Code did not provide for or otherwise authorize such specific treatment.
 

 Where, as here, a regulation attempts to alter the tax treatment mandated by the statute, explicitly
 
 or
 
 implicitly, such regulation can be given no effect.
 
 See Long Poultry Farms v. Commissioner,
 
 249 F.2d 726 (4th Cir.1957), wherein the court stated, with respect to an earlier regulation in 1953:
 

 The answer is that Congress while granting the right to the deduction by the cooperative left the matter of taxing the dividends to the recipients to be dealt with by existing law, making no change whatever with regard thereto.
 

 * * * * * *
 

 The Commissioner relies upon a regulation that he has adopted which accords with his contention in this case [citation omitted]; but to the extent that this regulation is contrary to existing law or attempts to tax as income what is not income under law, it is, of course, void and of no effect.
 

 Accordingly, the 1959 regulation can be given no effect here and, based upon otherwise identical facts as were present in
 
 Agway I,
 
 the redemption of the cooperative stock here in issue must be accorded capital gain tax treatment.
 

 **
 

 Pursuant to order of this court dated October 4, 1982, the Claims Court entered a judgment on October 8, 1982, corresponding to the decision recommended in this case.
 

 [1]
 

 . This history includes an attempt by IRS (through promulgation, in 1953, of Treasury Regulation 118, Section 39.22(a)-23) to tax a patron’s stock holdings or interest in a cooperative as ordinary income at the time of issuance, receipt, or recordation, to the full extent of the interest’s face, or par, value.
 

 The courts have refused to apply this standard, holding instead that, under the Code itself, the taxpayer could be taxed upon receipt only to the extent that the taxpayer actually received income upon receipt of the cooperative paper or account. Hence, the paper (or other interest) could be taxed, upon its receipt, as ordinary income only to the extent of value
 
 *1369
 
 or income actually
 
 received
 
 — i.e., its fair market value,
 
 if any.
 
 This interpretation of the applicable law was consistently applied in a variety of specific situations.
 
 See, e.g., Tomlinson v. Massey,
 
 308 F.2d 168 (5th Cir.1962);
 
 Long Poultry Farms v. Commissioner,
 
 249 F.2d 726 (4th Cir.1957); and
 
 Commissioner v. Carpenter,
 
 219 F.2d 635 (5th Cir.1955).
 

 Following court decisions construing the 1953 regulation, and prior to 1959, the Government recognized that the funds realized from the sale or exchange (or redemption) of cooperative stock, which is a capital asset, were subject to treatment as capital gain or loss.
 
 See Massey,
 
 308 F.2d at 174;
 
 Agway I,
 
 207 Ct.Cl. at 690, 524 F.2d 1194.
 

 [2]
 

 . The quoted material appears in the court’s majority opinion. Likewise, a rejection of defendant’s
 
 Corn Products,
 
 argument, founded on factual bases other than those set forth in the majority opinion, was contained in Judge Durfee’s separate concurring opinion which referred,
 
 inter alia,
 
 to the relationship between the cooperative and the taxpayer patron as set forth in the co-op By-Laws.
 

 [3]
 

 . Indeed, in
 
 Agway I,
 
 the court noted that that case represented the last instance of such stock issued prior to 1959. (This notation was contained in the section of the court’s decision reciting the long history of litigation involving these issues.) The court, in
 
 Agway 1,
 
 did not comment further on the 1959 regulation, nor was it necessary to do so inasmuch as that regulation (and the validity and applicability thereof) was not otherwise before the court at that time, apart from the aspect of retroactive application.
 

 [4]
 

 . This court, in its final section of the
 
 Agway I
 
 opinion, has already commented upon the undesirability of an endless relitigation policy, and such comments may be incorporated by reference herein without reiteration.
 

 [5]
 

 . Thus, the 1959 regulation attempted to obtain, in the end, the same result (namely, taxation as ordinary income of the full face or par value of the stock) provided for in the 1953 regulation, but without the defects noted therein by the courts. Specifically, the 1959 regulation would, as the courts had required, limit taxation (as ordinary income) upon receipt of the stock to its fair market value, if any.
 
 See
 
 note 1,
 
 supra.
 
 The excess, between fair market value and full par value, would, under the 1959 regulation, be taxed as ordinary income upon redemption.
 

 A 1962 statute, applicable only to stock issued
 
 after
 
 1962, would tax the paper as ordinary income, in the full face amount, at the time of receipt, not at the time of redemption, with various categories of paper specified for varying treatment. (This approach and the timing of taxation is similar to the approach of the 1953 regulation.)
 
 See
 
 note 1,
 
 supra; see also
 
 Raley, 491 F.2d at 137 n. 3; 140;
 
 Agwav 1,
 
 207 Ct.Cl. at 696, 524 F.2d 1194.
 

 [6]
 

 .
 
 See
 
 note 5, para. 2,
 
 supra.